# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

3-B CATTLE COMPANY, INC.,

    *Plaintiff,*

vs.

KELVIN MORGAN and SUSAN MORGAN,

    *Defendants.*

Case No. 18-01213-EFM

**MEMORANDUM AND ORDER**

Before the Court is Plaintiff 3-B Cattle Company, Inc.'s Motion for Partial Summary Judgment Against Defendants (Doc. 41). 3-B brought this action to enforce an oral settlement contract it allegedly entered into with the Morgans. 3-B now moves for partial summary judgment on its breach-of-contract claim. For the reasons stated below, the Court denies in part and grants in part 3-B's motion for summary judgment.

## I.     Factual and Procedural Background[1]

The Plaintiff, 3-B Cattle Company ("3-B"), is a corporation incorporated in Kansas. The Defendants, Kelvin and Susan Morgan, are individuals who reside and do business in Oklahoma. Jim Litton and Joe Schmitt own 3-B. Betty Litton, Jim's wife, performs bookkeeping services

---

[1] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts in the light most favorable to the non-moving party.

for 3-B. Taner Litton is one of Jim and Betty Litton's adult children and assists with 3-B's operations.

In 2010, 3-B and the Morgans orally contracted for the Morgans to keep, graze, feed, and manage 3-B's cattle. In return, 3-B would pay the Morgans a per-head fee plus feed costs. In December 2016, the parties disputed the number of 3-B's cattle in the Morgans' possession, eventually agreeing that the Morgans had overstated the number of 3-B's cattle by 729. This resulted in 3-B overpaying the Morgans by roughly $1.2 million.[2]

Throughout the first half of 2017, the parties negotiated the amount that the Morgans owed 3-B. These negotiations occurred through a combination of telephone calls and in-person meetings. Kelvin Morgan acknowledged that these negotiations were to settle 3-B's claims. Likewise, Susan Morgan acknowledged that she understood 3-B's offers were to settle its potential legal claims. By July 10, 2017, the parties agreed that the Morgans overstated the number of 3-B's cattle in their possession by 729, that they would compensate 3-B for the resulting fees it had overpaid, and that 3-B was willing to accept an amount less than its alleged total amount of loss as a settlement and release of its potential claims against the Morgans. As of July 10, the parties had discussed a few options concerning the amount and method of payment but had not reached a definitive agreement on these terms.

On July 10, 2017, the parties met in Coffeyville, Kansas, to resolve the matter. Jim and Taner Litton represented 3-B. Steve George, the senior vice president of the Bank of Tescott and 3B's banker, was also present. 3-B and the Morgans orally agreed to settle the dispute by paying 3-B a lump sum of $865,096 (the "Settlement Amount"). In return, 3-B agreed to forego the

---

[2] 3-B alleges the total amount of overpayment, but the Morgans dispute the alleged amount. However, a precise number is immaterial to the present action.

recovery of the remainder of its losses and to release the Morgans from liability.[3] The parties did not memorialize this oral agreement in writing. However, prior to the conclusion of the meeting, the Morgans signed a statement (the "Written Acknowledgment") acknowledging the Settlement Amount and the number of cattle it had overcharged, and agreeing to pay $10,000 of the Settlement Amount that day. The Written Acknowledged read as follows:

> We're in the process of working with Frontier Farm Credit to get the funding for the full amount of $865,096.00 owed to 3B Cattle Company for 729 head which includes interests and principal. We hope to have this resolved in 30-45 days. In the meantime, please accept our check of $10,000.00 for good faith money which will be deducted from the total amount at the time of final payment.

Both Kelvin and Susan Morgan signed this Written Acknowledgment without voicing any concerns or disagreements about the language.

Neither at the July 10 meeting nor during the preceding negotiations, did the parties clearly condition the Morgans' performance on their ability to obtaining financing from Frontier Farm Credit. Nor did the parties clearly indicate that no conditions existed. Rather, the Morgans informed 3-B that they were in the process of obtaining funding and thought they would have the full amount within 30-45 days. The Morgans eventually failed to obtain financing from Frontier Farm Credit. The Morgans paid 3-B $10,000 on July 10, 2017, but they paid no more of the alleged Settlement Amount any time thereafter.

3-B filed this action in Kansas, in the Montgomery County District Court on July 3, 2018, seeking to enforce the alleged Settlement Agreement, or alternatively to assert claims for breach, fraud, fraud by silence, negligent misrepresentation, conversion, and replevin. The Morgans filed a lawsuit against 3-B in the District Court of Nowata County, Oklahoma, seeking

---

[3] Although each particular term of the deal was not re-articulated at the July 10 meeting, all necessary contractual terms had been determined over the course of the parties' negotiations in the preceding 6 months.

declaratory judgment and an accounting. The parties removed those cases to their respective federal district courts. 3-B then filed a Motion to Transfer the case to this Court. On December 19, 2018, the U.S. District Court for the Northern District of Oklahoma granted 3-B's Motion to Transfer, consolidating the cases into the present one.[4] 3-B now seeks summary judgment on its breach of contract claim.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[5] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[6] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[7] The nonmovant must then bring forth specific facts showing a genuine issue for trial.[8] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[9] The court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[10]

---

[4] *Morgan v. 3-B Cattle Co., Inc.*, 2018 WL 6651529, at *3 (N.D. Okla. 2018).

[5] Fed. R. Civ. P. 56(c).

[6] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[7] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[8] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[9] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[10] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

### III. Analysis

3-B alleges it entered into an oral settlement contract with the Morgans and that the Morgans later breached the contract, resulting in damages to 3-B. The Morgans argue that the Court should deny summary judgment because the record presents multiple genuine issues of material fact as to the creation of the settlement contract and their alleged breach. The Court concludes that no genuine issue of material fact exists as to the creation of the oral settlement contract. 3-B is therefore entitled to judgment as a matter of law on that element. However, after successfully showing that a jury could reasonably interpret the facts to demonstrate the existence of a condition precedent to performance, the Morgans have met their burden to prove that genuine issues of material fact exist as to the element of breach. As such, the Court grants in part and denies in part 3-B's motion for summary judgment.

#### A. Choice of Law

"In a diversity matter, the court must apply the substantive law of the forum state, including its choice of law provisions."[11] Kansas courts apply "the rule of *lex loci contractus* (the place the contract was made) in cases involving contract law."[12] "Matters bearing upon the execution, the interpretation and the validity of a contract are determined by the law of the place where the contract is made."[13] The issues the Court must address in this motion pertain to contract existence, validity, and interpretation. Since it is undisputed that the facts relevant to the creation of the settlement contract occurred in Kansas, the Court will apply Kansas contract law.

---

[11] *Lipari v. U.S. Bancorp NA*, 2008 WL 4190784, at *2 (D. Kan. 2008).

[12] *King v. Citizens Bank of Warrensburg*, 1990 WL 154210, at *3 (D. Kan. 1990) (citations omitted); *see also Frasher v. Life Investors Ins. Co. of America*, 14 Kan. App. 2d 583, 796 P.2d 1069, 1071 (1990) ("For choice of law purposes where the issue is contract construction, Kansas applied the rule of *lex loci contractus*, i.e., the place of the making.").

[13] *King*, 1990 WL 154210, at *3 (*citing Sykes v. Bank*, 78 Kan. 688, 98 P. 206, 206 (1908)).

The elements of a breach-of-contract claim under Kansas law are: (1) the existence of a contract; (2) sufficient consideration supporting the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff resulting from the breach.[14] The only elements contested in this motion are the existence of a settlement contract between the parties and the Morgans' subsequent breach.[15] The Court will first consider whether an oral settlement contract exists based on the undisputed facts. If the Court determines that a contract exists, it will then consider whether there is a genuine issue of material fact concerning the existence of a condition precedent to the Morgans' duty to perform.

B. **Existence of Settlement Contract**

The essential elements of a valid informal contract are: (1) A promisor and a promisee with the legal capacity to contract; (2) manifestation of assent by the parties to the terms of the contract and to the consideration for the promises; (3) sufficient consideration; and (4) lawful purpose.[16] "[W]hether undisputed facts establish the existence and terms of a contract raise a question of law for the court's determination."[17] "When determining whether an agreement was formed, it is important to remember the key principle that '[t]he law favors settlement of

---

[14] *Stechschulte v. Jennings*, 297 Kan. 2, 298 P.3d 1083, 1098 (2013) (internal citations omitted).

[15] It is undisputed that the Morgans failed to pay 3-B the Settlement Amount, that 3-B suffered a financial loss as a result of the Morgans' miscounting of its cattle, and that 3-B only ever received $10,000 from the Morgans to compensate for that loss. It is also undisputed that 3-B was willing to perform under the contract. The Morgans initially asserted that 3-B's willingness to forgo legal action failed to meet sufficient consideration, but they have since abandoned that argument.

[16] *O'Neill v. Herrington*, 49 Kan. App. 2d 896, 317 P.3d 139, 144 (2014).

[17] *M W., Inc. v. Oak Park Mall, L.L.C.*, 44 Kan. App. 2d 35, 234 P.3d 833, 843 (2010) (citation omitted).

disputes.' "[18] Courts prefer that parties settle their disputes rather than engage in litigation.[19] Settlements need not be in writing to be enforceable.[20]

The Morgans argue that, due to a lack of mutual assent or sufficient consideration, no settlement contract existed. It is important to note that 3-B argues that the contract it is attempting to enforce was an oral settlement agreement and that the Written Acknowledgment was not a contract, but merely strong evidence of the existence of the oral contract. The Morgans, on the other hand, attempt to confuse the issues by asserting that the Written Acknowledgment was not a valid contract. The Court agrees that the Written Acknowledgment was not a contract, but merely evidence of the existence of an oral contract. As such, the Court must determine whether the evidentiary record—including the Written Acknowledgment—creates a genuine issue of material fact regarding the existence of an oral settlement contract.

    1.    *Mutual Assent*

In order to form a contract, there must be a "meeting of the minds" between the parties on all the essential terms.[21] "To constitute a meeting of the minds there must be a fair understanding between the parties which normally accompanies mutual consent and the evidence must show with reasonable definiteness that the minds of the parties met upon the same matter and agreed upon the terms of the contract."[22] "This standard relies on objective, observable

---

[18] *Id.* (citing *Bright v. LSI Corp.*, 254 Kan. 853, 869 P.2d 686, 690 (1994)).

[19] *Id.*

[20] *Lewis v. Gilbert*, 14 Kan. App. 2d 201, 785 P.2d 1367, 1368 (1990).

[21] *Unified Sch. Dist. No. 446, Indep., Kansas v. Sandoval*, 295 Kan. 278, 286 P.3d 542, 546 (2012) (citing *Albers v. Nelson*, 248 Kan. 575, 809 P.2d 1194, 1198 (1991)).

[22] *Steele v. Harrison*, 220 Kan. 422, 552 P.2d 957, 962 (1976).

manifestations of intent to contract, rather than the purely subjective intent of the parties."[23] "The terms of an oral contract and the consent of the parties may be proven by the parties' acts and by the attending circumstances, as well as by the words that the parties employed."[24] Parties do not need to explicitly declare that they are entering into an oral contract.[25]

The Court concludes that the objective manifestations of the parties indicate that there was mutual assent to settle 3-B's claims. The facts show that 3-B and the Morgans carried on months of settlement negotiations, determining the number of cattle the Morgans should compensate 3-B for and proposing multiple offers and counter-offers regarding the settlement amount. At no point during these negotiations did the parties establish that the final settlement contract must be reduced to writing. In fact, the parties' business relationship was primarily based on oral contracts over a course of dealing dating back to 2010. The parties negotiated the settlement of 3-B's claims based on this seven-year record of informal deals.

At the July 10, 2017 meeting, the Morgans indicated that they understood the nature of the settlement negotiations. The undisputed evidence shows that 3-B manifested its willingness to forgo further recovery of its claims against the Morgans in exchange for a settlement payment. The Morgans objectively manifested that they understood they could resolve the dispute by paying 3-B a settlement amount, which was not conclusively determined until the July 10 meeting. During that meeting, Kelvin and Susan Morgan signed the Written Acknowledgment. While that was not the contract itself, it nevertheless provides evidence as to the existence of a

---

[23] *Republic Bank, Inc. v. W. Penn Allegheny Health Sys., Inc.*, 475 F. App'x 692, 698 (10th Cir. 2012) (citation and quotation omitted).

[24] *Sandoval,* 286 P.3d at 546 (citation omitted).

[25] *Quaney v. Tobyne*, 236 Kan. 201, 689 P.2d 844, 851-52 (1984).

debt owed to 3-B by incorporating the following unambiguous language: ". . . the full amount of $865,096.00 *owed to 3-B Cattle Company* for 729 head . . ."[26] The Morgans did not voice any concerns or disagreements about signing the Written Acknowledgment. Furthermore, the Morgans gave 3-B a check for $10,000 as "good faith money" to indicate their assent to the settlement contract.

Although the Morgans dispute that they intended to enter into a settlement contract, they point to no evidence showing objective manifestations of that contrary intent. Rather, the evidence conclusively shows that the Morgans repeatedly manifested their assent to settle 3-B's claims over the course of the negotiations. They objectively manifested their acceptance of 3-B's offer at the July 10 meeting, shown by their words, conduct, and signing of the Written Acknowledgment. As a result, 3-B has met its burden to prove the element of mutual assent and the Morgans fail to show a genuine issue of material fact regarding their objective manifestations of assent. The Court concludes that these objective manifestations constitute mutual assent.

    2.    *Consideration*

The Morgans also argue that a genuine issue of material fact exists regarding the element of consideration. In order to be valid, a contract must be supported by consideration.[27] While courts presume—unless proven otherwise—that written contracts are supported by consideration, plaintiffs asserting breach-of-contract claims for oral contracts must establish the presence of valid consideration.[28] "Where one in good faith asserts a claim not obviously invalid, worthless, or frivolous, and which might be thought to be reasonably doubtful, the forbearance to prosecute

---

[26] Doc. 42, Ex. 11 (emphasis added).

[27] *James Colborn Revocable Tr. v. Hummon Corp.*, 55 Kan. App. 2d 120, 408 P.3d 987, 991 (2017).

[28] *See id.* at 992.

-9-

such a claim will furnish a sufficient consideration for a promise of settlement and compromise of such claim."[29]

The Court concludes that sufficient consideration existed to support the promises of 3-B and the Morgans. In exchange for $865,096, 3-B agreed to settle its claims against the Morgans. The Morgans argue that there is no evidence of consideration, largely because the Written Acknowledgment did not state that 3-B was relinquishing its right to sue. However, as previously stated, the Written Acknowledgment is merely evidence of the existence of an oral contract and need not contain all of the terms of that oral contract on its face. It is also important to note that the Morgans acknowledged their settlement debt to 3-B and paid $10,000 in "good faith money." It seems highly unlikely that they would have done so unless they were receiving something of value in return.

Regardless of the Written Acknowledgment's evidentiary support for 3-B's consideration, the record contains ample evidence of the parties' prior negotiations, all of which contemplated 3-B's willingness to relinquish its legal claims. The evidence shows that the Morgans objectively manifested their understanding that 3-B was offering to settle its claims, and they point to nowhere in the record that contradicts that understanding. As such, 3-B has met its burden to prove the element of consideration and the Morgans fail to present evidence showing a genuine dispute of material fact as to this element. The Court concludes that 3-B's forbearance to prosecute a non-frivolous claim constitutes legally sufficient consideration and therefore 3-B has established the consideration element of its breach-of-contract claim.

---

[29] *Id.* at 991–92.

3-B has provided sufficient evidence to establish all of the elements for the existence of an oral settlement contract. The Morgans have failed to show a genuine issue of material fact as to the mutual assent and consideration elements, and otherwise conceded arguments as to the remaining elements. As such, the Court concludes that 3-B has demonstrated that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law regarding the existence of an oral settlement contract.

### C. Condition Precedent to Performance

The Morgans argue that they did not breach the settlement contract because their performance was conditioned on obtaining financing from Frontier Farm Credit. They argue that the Written Acknowledgment evinces the existence of this condition precedent. 3-B argues that the relevant language in the Written Acknowledgment is mere surplusage, providing 3-B and its banker with information about the Morgans' attempts to obtain financing, but not conditioning performance on obtaining such financing. Viewing the evidence in the light most favorable to the non-moving party, the Court concludes that the Morgans have carried their burden to prove a genuine issue of material fact regarding the existence of a condition precedent to the performance of the settlement contract.

"A condition precedent is something that it is agreed must happen or be performed before a right can accrue to enforce the main contract."[30] "Courts have recognized two types of conditions precedent: conditions precedent to *performance under an existing contract* and conditions precedent to the *formation of a contract*."[31] As previously stated, there is not a

---

[30] *Wallerius v. Hare*, 194 Kan. 408, 399 P.2d 543, 547 (1965).

[31] *Oak Park Mall*, 234 P.3d at 843 (further stating "[s]ubstantial authority exists, however, that most conditions precedent are conditions precedent to performance under an existing contract rather than conditions precedent to formation of a contract," and later at 844, "[t]he issue here is whether the parties intended to form a

genuine issue of material fact as to the existence of the contract in this case. Rather, the issue at hand deals with the existence of a condition precedent to performance under the existing settlement contract. If there is a genuine issue of material fact as to the existence of a condition precedent to performance, then summary judgment is improper.[32]

The pertinent evidence comes from language in the Written Acknowledgment. Specifically, the Morgans argue that a jury could reasonably conclude that the phrase "[w]e're in the process of working with Frontier Farm Credit to get the funding for the full amount . . ." reveals the existence of a condition precedent to the Morgans' duty to pay 3-B. 3-B contradicts this by stating that Steve George, not the Morgans, suggested including this language in the Written Acknowledgment and that there was no discussion of condition precedents at the July 10 meeting.

The Court concludes that there is a genuine issue of material fact as to the existence of a condition precedent to the performance of the settlement contract. As previously stated, the Written Acknowledgment is not a contract, but rather evidence of an oral contract. As such, a jury would interpret the language in the Written Acknowledgment when construing the nature of the contract. 3-B's points are simply arguments to construe the evidence in 3-B's favor, not that there is a lack of evidence. Construing the evidence in the light most favorable to the Morgans, the Court concludes that a jury could reasonably find that the ambiguous language demonstrates the existence of a condition precedent to the performance of the settlement contract. This

---

binding contract with conditions precedent to the performance under the contract or whether they intended their communications to result in the formation of a contract only after the conditions precedent were met. In analyzing this issue, we bear in mind that [a] court should be cautious in granting a motion for summary judgment when resolution of the dispositive issue necessitates a determination of the state of mind of one or both of the parties." (citations omitted)).

[32] *Id*. at 844.

condition precedent would have obligated the Morgans to pay 3-B only if they obtained financing from Frontier Farm Credit. Since they failed to obtain financing, the Morgans would have correspondingly lacked a duty to perform under the settlement contract and therefore could not have breached the contract for failing to perform.

### D. Conclusion

The Court concludes that 3-B has carried its burden to prove the existence of an oral settlement contract, and the Morgans have failed to show a genuine issue of material fact concerning the existence of the contract. The Court denies summary judgment as to 3-B's entire breach-of-contract claim, however, because the Morgans have shown a genuine issue of material fact regarding the existence of a condition precedent. Viewing the evidence in the light most favorable to the non-moving party, the Court concludes that a jury could reasonably find that the Morgans' performance was conditioned on their ability to obtain financing from Frontier Farm Credit. As such, the Court will not grant summary judgment to enforce the contract or otherwise award 3-B damages.

**IT IS THEREFORE ORDERED** that Plaintiff 3-B Cattle Company, Inc.'s Motion for Partial Summary Judgment Against Defendants (Doc. 41) is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS SO ORDERED.**

Dated this 23rd day of December, 2019.

*Eric F. Melgren*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE